# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 1:23CR159 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| REGGIE JORDAN, | ) | (Resolving Doc. 26) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Reggie Jordan's motion to dismiss the indictment (Doc. 6). The Government has opposed his motion, and the Court now resolves the parties' arguments. For the reasons stated below, the motion is DENIED.

## I.  Legal Standard

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms without regard to Militia service. *Id.* at 595, 598–99. The Court noted that the Second Amendment codified the pre-existing right to keep and bear arms. *See id.* at 592 ( "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right"). The core right recognized by *Heller* was "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

Until recently, *United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012) provided the

framework for analyzing a Second Amendment claim in the Sixth Circuit.

> Since the Supreme Court's decision in *Heller*, courts have wrestled with
> its text to develop a sound approach to resolving Second Amendment
> challenges. Several circuits have adopted a two-pronged approach. *See*
> *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) ("As we read
> *Heller*, it suggests a two-pronged approach to Second Amendment
> challenges."); *Chester*, 628 F.3d at 680 (applying two-pronged approach);
> *Ezell v. City of Chicago*, 651 F.3d 684, 701–03 (7th Cir. 2011) (same);
> *United States v. Reese*, 627 F.3d 792, 800–01 (10th Cir.2010) (same).
>
> Under the first prong, the court asks whether the challenged law burdens
> conduct that falls within the scope of the Second Amendment right, as
> historically understood. *Chester*, 628 F.3d at 680. As the Seventh Circuit
> recognized, "*Heller* suggests that some federal gun laws will survive
> Second Amendment challenge because they regulate activity falling
> outside the terms of the right as publicly understood when the Bill of
> Rights was ratified." *Ezell*, 651 F.3d at 702. If the Government
> demonstrates that the challenged statute "regulates activity falling outside
> the scope of the Second Amendment right as it was understood at the
> relevant historical moment—1791 [Bill of Rights ratification] or 1868
> [Fourteenth Amendment ratification]—then the analysis can stop there;
> the regulated activity is categorically unprotected, and the law is not
> subject to further Second Amendment review." *Id*. at 702–03.
>
> "If the government cannot establish this—if the historical evidence is
> inconclusive or suggests that the regulated activity is not categorically
> unprotected—then there must be a second inquiry into the strength of the
> government's justification for restricting or regulating the exercise of
> Second Amendment rights." *Id.* at 703. Under this prong, the court applies
> the appropriate level of scrutiny. *Marzzarella*, 614 F.3d at 89. If the law
> satisfies the applicable standard, it is constitutional. *Id*. If it does not, "it is
> invalid." *Id*.
>
> We find this two-pronged approach appropriate and, thus, adopt it in this
> Circuit.

*United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012).   However, the Supreme

Court recently held that "[d]espite the popularity of this two-step approach, it is one step

too many."  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2127

(2022).  "Instead, the government must affirmatively prove that its firearms regulation is

part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*

In examining the now-singular prong of the test established by *Bruen*, this Court must be mindful that the Second Amendment right to keep and bear arms "is not unlimited." *Heller*, 554 U.S. at 626. *Heller* explained that "[f]rom Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. While not defining the full scope of the Second Amendment right, *Heller*'s dicta noted:

> [N]othing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626–27, 627 n. 26. "Relying on that language from *Heller*, this Court has held that § 922(g)(1) comports with the Second Amendment, stating that 'prohibitions on felon possession of firearms do not violate the Second Amendment,' and 'Congress's prohibition on felon possession of firearms is constitutional.' *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010)." *United States v. Whisnant*, 391 Fed. Appx. 426, 430 (6th Cir. 2010).

Jordan, however, contends that the extensive line of cases upholding the prohibition on felons possessing firearms is no longer valid. Jordan asserts that *Bruen*'s alteration of the test for reviewing such a challenge effectively invalidated all of the Sixth Circuit's precedents and that this Court should adopt the approach of the Third Circuit in *Range v. Attorney General*, 69 F.4th 96 (3d. Cir. 2023). In *Range*, the Third Circuit

3

found that a defendant with a prior conviction for making a false statement to obtain food stamps remained one of "the people" protected by the Second Amendment.

> Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms. Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id*. at 106.

The Court declines to follow *Range* as it finds that the Supreme Court has been *consistently* clear that its Second Amendment jurisprudence has cast no doubt on the validity of the prohibitions on the possession of firearms by convicted felons.  The Supreme Court said that nothing in its holding in *District of Columbia v. Heller*, 554 U.S. 570, (2008), "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 626; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion). *Bruen*, reaffirmed that the right is "subject to certain reasonable, well-defined restrictions," 142 S. Ct. at 2156, and did not disturb those statements or cast doubt on the prohibitions. *See id*. at 2157 (Alito, J., concurring); *id*. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id*. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.). Given these assurances by a majority of the current Supreme Court, and the history that supports them, this Court agrees with the Eighth Circuit that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023).

> In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons

who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.

*Id.* at 505.

Herein, even if this Court were inclined to evaluate Jordan's particular history, it would find that Jordan's Second Amendment rights were properly curtailed. Jordan was convicted in 2008 of aggravated robbery with a firearm specification. Jordan seems to suggest that this violent felony occurred 15 years ago and therefore he can no longer be deemed "dangerous" enough to warrant prohibiting him from owning a firearm. In so doing, Jordan ignores that he has continued to violate the law for *years* following this conviction. Following completion of his prison sentence for the aggravated robbery, Jordan sustained convictions for drug possession, escape, drug trafficking, and possessing a weapon while under disability. While Jordan appears to contend that these convictions are not "dangerous," the Court rejects such a contention.

Guns and drugs "are a dangerous combination"—as courts across the country have consistently found. *Smith v. United States*, 508 U.S. 223, 240 (1993) ("When Congress enacted the current version of § 924(c)(1), it was no doubt aware that guns and drugs are a dangerous combination.... [They] create[ ] a grave possibility of violence and death[.]"); *United States v. Timmons*, 283 F.3d 1246, 1251 (11th Cir. 2002) ("[T]he purpose of [§ 924(c)] is to combat the dangerous combination of drugs and guns[.]"); *United States v. Castano*, 543 F.3d 826, 830 (6th Cir. 2008) (noting trial testimony that included: "typically if somebody is selling drugs or buying drugs it's a dangerous situation.").

Thus, even if this Court were to adopt Jordan's theory that "only dangerous persons" could be disarmed, his challenge would still fail.  Jordan has shown a consistent propensity to engage in dangerous criminal activity.   As such, he has failed to demonstrate any violation of his Second Amendment rights.

To the extend that Jordan seeks to argue that 922(g) is overbroad and vague, his challenges similarly fail.  While Jordan encourages the Court to engage in an overbreadth analysis, the Court declines to expand the overbreadth doctrine beyond the First Amendment, and Jordan has not provided any authority to show that *any* Court has expanded the doctrine and applied in the Second Amendment context.  Moreover, as Jordan has raised no argument that 922(g) is vague as applied to *his facts*, he may not maintain such a challenge.  *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012).

### IV. Conclusion

Having found no merit in Jordan's contentions, his motion to dismiss the indictment is DENIED.


IT IS SO ORDERED.


June 29, 2023                *          /s/ Judge John R. Adams* _____
Date                                             JUDGE JOHN R. ADAMS
                                                 UNITED STATES DISTRICT COURT